UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: Harrison E. Smith, Jr,　　　　　　　　　　　　　　　　Case No. 16-12493-j7

　　　　Debtor.

---

BOYER INSURANCE GROUP, LLC,

　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　　　　Adv. No. 16-01075-j

HARRISON E. SMITH, JR.,

　　　　Defendant.

## MEMORANDUM OPINION

The Court held a trial on the merits on October 3, 2017 and took under advisement whether the Defendant's debt was non-dischargeable due to false pretenses, false misrepresentation, or fraud under 11 U.S.C. §523(a)(2)(A). Plaintiff Boyer Insurance Group, LLC ("Boyer") appeared through its counsel, David Ferrance. Defendant Harrison E. Smith, Jr. (hereinafter Mr. Smith) appeared pro se. Having considered the evidence and applicable law, for the reasons explained below the Court has determined that Mr. Smith's indebtedness to Boyer was procured by false pretenses and is non-dischargeable under 11 U.S.C. §523(a)(2)(A).

## FINDINGS OF FACT

Boyer, a limited liability company owned and managed by Joel and Christina Boyer, is or was an Allstate insurance agency. As such, Boyer had an economic interest in an Allstate book of business. Although Allstate owns its agents' books of business, its independent insurance agents have an economic interest in their Allstate book of business  An Allstate insurance agent

may use its book of business as security for a loan but must use Allstate forms of agreements. The agreements grant a lender a security interest in the agent's economic interest in the book of business and set up automatic payments on the loan from the commission checks. The agreements are between the agent and Allstate, with the lender as a beneficiary. In addition, with Allstate's consent, an independent Allstate insurance agent may sell its economic interest in an Allstate book of business to another independent Allstate insurance agent.

Boyer sold an Allstate book of business to Mr. Rockovitz in May 2011. Boyer provided owner financing for the sale. To obtain the financing Mr. Rockovitz executed two Allstate forms of agreement to grant Boyer a security interest in the book of business and automatic payments from commissions payable to Mr. Rockovitz.

In August 2013, Mr. Rockovitz wanted to sell the book of business and found an Allstate approved purchaser, Mr. Smith, who is also known as Chip Smith. In connection with the purchase, Mr. Smith and Boyer agreed Mr. Smith would execute a new promissory note payable to Boyer in the amount Mr. Rockovitz still owed Boyer in connection with his purchase of the book of business. Further, Mr. Smith and Boyer agreed Mr. Smith would execute new Allstate Agreements (the "new Allstate Agreements") to replace the Allstate Agreements Mr. Rockovitz had signed in connection with the owner financing Boyer provided to Mr. Rockovitz. Under the new Allstate Agreements, Mr. Smith would grant Boyer a lien against the book of business and Allstate would make Mr. Smith's payments to Boyer on the new promissory note from commissions payable to Mr. Smith. The Court does not find Mr. Smith's testimony to the contrary to be credible.

During the negotiations, Mr. Rockovitz, Joel Boyer, and Mr. Smith met and discussed the sale and the terms of the financing arrangement. The parties discussed the purpose and

importance of the new Allstate Agreements as a material aspect of the financing arrangement so the amount owed to Boyer would remain collateralized and paid by Allstate deductions from commissions payable to Mr. Smith. Without the new Allstate Agreements, Boyer would not have agreed to permit Mr. Smith to take over Mr. Rockovitz's debt to the Boyer. The parties understood that Allstate would prepare and send the new Allstate Agreements to Mr. Smith for him to execute and return to Allstate.

The transaction was hurried because of Mr. Rockovitz's need for a quick closing. *See* Exhibit 5. None of the parties had legal counsel during the negotiations or sale. Two days before the closing date, Mr. Smith sent an e-mail to Joel Boyer that stated, "What [Mr. Rockovitz] and I need quickly is an assignment of lien from [Mr. Rockovitz] to me. I will sign the necessary documents as soon as needed." *See* Exhibit 5. Mr. Smith followed up shortly with another e-mail to Joel Boyer that stated, "I have Allstate's assignment of commission notice for the payment to Sunwest. I will have that filled out tonight. Thanks, Chip." *See* Exhibit 4. These e-mails led Joel and Christina Boyer to believe Mr. Smith had received the new Allstate Agreements, was in the process of executing the documents, and would return the signed documents to Allstate shortly. Mr. Smith knew that his e-mails created a false impression upon which Boyer was relying in closing the loan transaction. Mr. Smith concealed from Boyer that he had not actually decided whether to sign the new Allstate Agreements, knowing that if he disclosed this the transaction would not close until he actually delivered the signed agreements. Boyer in fact relied on Mr. Smith's false impression that he would return the signed documents to Allstate shortly. The Court infers from Mr. Smith's conduct and finds that Mr. Smith intended to deceive Boyer by his false impression.

During the closing on August 22, 2013 Joel and Christina Boyer did not inquire if Mr.

Smith had executed the new Allstate Agreements. Boyer relied on his prior verbal promises and written assurances. Mr. Smith never did or said anything to correct this belief. Based on Boyer's understanding and belief that Mr. Smith would execute the new Allstate Agreements, Boyer proceeded with closing. At closing, Mr. Smith executed a promissory note (the "Promissory Note") in the amount of $128,170.82 payable to Joel and Christina Boyer that novated Mr. Rockovitz' debt to Boyer. *See* Exhibit 1. At that time, payments on the promissory note Mr. Rockovitz had made were current. Joel and Christina Boyer assigned the Promissory Note to Boyer. *See* Exhibit 2.

Boyer's reliance on Mr. Smith's implied representation that he would sign and return the new Allstate Agreements to Allstate was justifiable. Allstate had approved Mr. Smith's purchase of the book of business in connection with his service as an independent Allstate insurance agent. Mr. Smith agreed in conversations and in writing to execute and return the new Allstate Agreements to Allstate. Boyer did not think it was necessary to investigate anything in this regard, and there were no red flags that Mr. Smith was being deceitful. Although familiar with the insurance business, neither Joel nor Christina Boyer are lawyers, nor were they represented by counsel in this transaction. They took Mr. Smith at his word.

Mr. Smith signed the Promissory Note "Chip Smith." Mr. Smith used the name Chip Smith while conducting his insurance business. His insurance agency was called Chip Smith Insurance Agency. *See* Exhibit 6. Mr. Smith identified himself as Chip Smith to the Boyers during the negotiations regarding the financing arrangement. Mr. Smith signed the Promissory Note "Chip Smith" intending the signature of his nickname to be his signature on the document for the purpose of obligating himself under the Promissory Note.

After the closing, Mr. Smith sought to consult a lawyer regarding the new Allstate

Agreements but never retained counsel. Mr. Smith did not feel comfortable signing the new Allstate Agreements without the advice of counsel. Mr. Smith did not tell the Boyers that he was considering hiring a lawyer.

Once Boyer learned that Mr. Smith had not executed the new Allstate Agreements, Joel Boyer sent numerous e-mails to both Allstate and Mr. Smith in an attempt to remedy the situation. *See* Exhibit 6. Boyer was told by Allstate Lending Connection that the agreements needed to be executed by Mr. Smith. *See* Exhibit 6. During this time Mr. Smith was making regular monthly payments on the loan. He once again persuaded Boyer that he intended to execute the new Allstate Agreements and had not yet done so because he was in the process of incorporating his insurance agency and wanted the corporation to be the party to the agreements. Boyer trusted Mr. Smith, took this statement at face value, and assumed the new Allstate Agreements would be executed when Mr. Smith incorporated the business. It did not pursue the matter further.

Mr. Smith eventually sold the book of business and used the sale proceeds to pay a creditor other than Boyer. Had Mr. Smith executed and returned the new Allstate Agreements proceeds from the sale of the book of business would have been paid instead to Boyer. It was reasonably foreseeable that without a security interest in the book of business and without automatic note payments made by Allstate via commission deductions, there was a greater risk of nonpayment under the Promissory Note and that Boyer would suffer a substantially greater loss on default under the Promissory Note

When he took the loan from Boyer, Mr. Smith intended to pay it back. In 2015, however, he stopped making regular payments on the Promissory Note.[1] When he defaulted, Boyer learned

---

[1] There was an additional interest payment of $3,819.58 made in 2016.

that neither Mr. Smith nor a corporation he said he was forming had ever executed the new Allstate Agreements. Once again, Joel Boyer contacted Allstate to no avail. When Boyer filed a state court action against Mr. Smith on September 1, 2016 the balance due and owing by Mr. Smith to Boyer on the Promissory Note was $106,460.78. Mr. Smith filed a chapter 7 bankruptcy case on October 6, 2016. This adversary proceeding ensued.

To the extent Mr. Smith's testimony differs from the above facts found by the Court, the Court did not find Mr. Smith's testimony to be credible.

## DISCUSSION

Boyer asserts the debt Mr. Smith owes it under the Promissory Note should be excepted from the discharge under 11 U.S.C. §523(a)(2)(A). Boyer argues it holds a valid, enforceable Promissory Note that Mr. Smith obtained by false pretenses upon which Boyer justifiably relied to its detriment. Mr. Smith counters that the Promissory Note is unenforceable because he did not sign it using his legal name. In addition, he argues that even if the Promissory Note is enforceable Boyer failed to exercise reasonable diligence to ensure the new Allstate Agreements were signed before lending him the money. Finally, Mr. Smith contends he did not intend to mislead Boyer because when he signed the Promissory Note he intended to repay the loan as evidenced by his making payments for some time under the Promissory Note. After considering the evidence and applicable law, the Court has determined Mr. Smith is indebted to Boyer and that debt is non-dischargeable under 11 U.S.C. §523(a)(2)(A).

To determine whether a debt should be excepted from discharge under 11 U.S.C. §523(a)(2)(A) the Court makes a two-step inquiry. First, the court considers the validity of the debt under applicable non-bankruptcy law. Second, the court considers whether the debt is non-

dischargeable under the Bankruptcy Code.[2] *In re Thompson*, 555 B.R. 1, 8 (10th Cir. BAP 2016) ("Dischargeability actions require a two-part analysis: first, the bankruptcy court must determine the validity of the debt under applicable law (the claim on the debt); and second, the bankruptcy court must determine the dischargeability of that debt under § 523 (the dischargeability claim)."). *See also In re McKendry*, 40 F.3d 331, 336 (10th Cir. 1994) ("'In bankruptcy court there are two separate and distinct causes of action: One cause of action is on the debt and the other cause of action is on the dischargeability of that debt, a cause of action that arises solely by virtue of the Bankruptcy Code and its discharge provisions.'")(quoting *In re Moran*, 152 B.R. 493, 495 (Bankr. S.D. Ohio 1993)); *cf. Brown v. Felsen,* 442 U.S. 127, 135 (1979) (differentiating between the claim on the debt and the claim on dischargeability of the debt in holding that claim preclusion effect of a state court judgment does not extend to the claim on dischargeability of a debt.).

The Court will first examine the validity of the debt owed by Mr. Smith to Boyer and then whether the debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).[3]

1.  <u>The validity of the debt to the Boyer</u>

Boyer asserts the Promissory Note is a valid instrument enforceable against Mr. Smith and Mr. Smith owes Boyer the amount owing under the Promissory Note. Mr. Smith's sole argument in response is that the Promissory Note is not valid and enforceable because he signed it "Chip Smith" and not in his legal name, "Harrison E. Smith, Jr." The Court holds the Promissory Note is valid and is enforceable against Mr. Smith.

The United States Supreme Court explains, "A debt is defined in the [Bankruptcy] Code as liability on a claim, § 101(12), a claim is defined in turn as a right to payment, § 101(5)(A),

---

[2] References to the Bankruptcy Code are to Title 11 of the United States Code.
[3] The Court was not asked to determine monetary damages and will leave that determination to the state court.

-7-

and a right to payment, we have said, is nothing more nor less than an enforceable obligation."
*Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998) (internal quotations omitted). To determine the
validity of the debt the Court looks to applicable non-bankruptcy law. *In re Thompson*, 555 B.R.
at 8. In this case, the Court looks to the Uniform Commercial Code as adopted in New Mexico
(the "UCC").

Under Article 3 of the UCC, "a person is entitled to "enforce a negotiable instrument
such as a promissory note: (1) when that person is the holder of the instrument." *Deutsche Bank
Nat. Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 14, 369 P.3d 1046, 1051; *see also* N.M. Stat. Ann.
§ 55-3-301. A person is a holder of the instrument when "the person in possession of a
negotiable instrument that is payable either to bearer or to an identified person that is the person
in possession." N.M. Stat. Ann. § 55-1-201(b)(21)(A). At trial Boyer proved it is the holder of
the Promissory Note and therefore is entitled to enforce the note to the extent it is enforceable.
The Court now turns to whether Mr. Smith is liable on the Promissory Note.

Mr. Smith contends he is not liable on the Promissory Note because he signed it "Chip
Smith" and not with his legal name, Harrison E Smith Jr. Article 3 of the UCC states, "[a] person
is *not* liable on an instrument *unless* . . . the person signed the instrument." N.M. Stat. Ann. § 55-
3-401(a)(emphasis added). Under the UCC, however, a person may sign the instrument "by the
use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or
adopted by a person with present intention to authenticate a writing." N.M. Stat. Ann. § 55-3-
401(b). Signing a nickname is sufficient under this provision if the person signing the document
intended the writing of his nickname to be his signature on the document. Mr. Smith conducted
his insurance business under the name Chip Smith Insurance Agency, held himself out as Chip
Smith when negotiating the purchase of and financing for the book of business, signed the

Promissory Note "Chip Smith" for the purpose of obligating himself under the Promissory Note, and accepted the loan after signing the Promissory Note. The Court concludes that Mr. Smith's signing "Chip Smith" constitutes his valid, binding signature on the Promissory Note. Mr. Smith is indebted to Boyer for the unpaid amount of the Promissory Note.

2.	Exception to Discharge for False Pretenses under 11 U.S.C. §523(a)(2)(A).

Boyer argues that the debt Mr. Smith owes it under the Promissory Note should be excepted from discharge because the Mr. Smith induced Boyer to lend him $128,170.82 by false representation or through false pretenses. Mr. Smith counters that it was Boyer's responsibility to ensure that he executed the new Allstate Agreements when the Promissory Note was signed at the closing and Mr. Rockovitz was released of liability to Boyer. Mr. Smith also maintains that he did not intend to mislead Boyer as evidence by the payments he made on the Promissory Note. The Court agrees with Boyer; the debt is non-dischargeable under 11 U.S.C. §523(a)(2)(A).

The exceptions to discharge in §523 are narrowly construed to advance the purpose of the Bankruptcy Code in allowing an "honest but unfortunate debtor" to receive a fresh start. *Cohen* 523 U.S. at 217. The Bankruptcy Code, however, does not permit discharge of "any debt" that is "obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. §523(a)(2)(A).

"To sustain a claim for false representation under Section 523(a)(2)(A), the claimant must prove by a preponderance of the evidence that: 1) the debtor made a false representation; 2) with the intent to deceive the creditor; 3) the creditor relied on the false representation; 4) the creditor's reliance was [justifiable]; and 5) the creditor was damaged as a result." In re *Strugeon,* 496 B.R. 215, 222 (10th Cir. BAP 2013).

"False pretenses under Section 523(a)(2)(A) are implied misrepresentations intended to

create and foster a false impression. Unlike false representations, which are express misrepresentations, false pretenses include conduct and material omissions." *Id*. at 223. False pretenses "can be defined as any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongfully induced to extend money or property to the debtor." *Id.* When considering false pretenses the question is not whether the debtor made an express false representation but instead whether there were "omissions or a failure to disclose on the part of the debtor . . . where the circumstances of the case are such that omissions or failure to disclose create a false impression which is known by the debtor." *In re Hentges*, 373 B.R. 709, 725 (Bankr. N.D. Okla. 2007). New Mexico law follows the Restatement of Torts in holding, "A duty to disclose may arise if there is knowledge that the other party to a contemplated transaction is acting under a mistaken belief." *Krupiak v. Payton*, 1977-NMSC-024, ¶ 3, 90 N.M. 252, 253, 561 P.2d 1345, 1346.

*Mr. Smith with intent to deceive obtained the loan from Boyer through false pretenses upon which Boyer relied.*

Mr. Smith knowingly and with the intent to deceive created the false impression that he would execute the new Allstate Agreements and return the signed documents to Allstate shortly. Mr. Smith knew the new Allstate Agreements were a material aspect of the financing arrangement, and Boyer would not close the loan transaction without Mr. Smith's assurance that he would promptly send the signed new Allstate Agreements to Allstate. By this false pretense, Mr. Smith wrongfully induced Boyer to finance his purchase of the book of business from Mr. Rockovitz. In closing the loan transaction, Boyer relied on Mr. Smith's implied misrepresentation.

-10-

*Boyer's reliance was justifiable*

The fourth element of a 11 U.S.C. § 523(a)(2)(A) non-dischargeability claim is whether Boyer's reliance on the false pretenses were "justifiable." Justifiable reliance does not require "reasonable reliance," which is a higher standard. *Field v. Mans*, 516 U.S. 59, 61, (1995) (holding, "the standard to be the less demanding one of justifiable reliance.") Justifiable reliance requires the plaintiff to "use his senses and at least make a cursory examination or investigation of the facts of the transaction before entering into it." *In re Riebesell*, 586 F.3d 782, 792 (10th Cir. 2009). When determining if a plaintiff's reliance was justifiable courts consider whether there were any "red flags" in the transaction that would have put the creditor on notice that further investigation was warranted. *In re Watson*, 958 F.2d 977, 980 (10th Cir. 1992); *see also In re Osborne,* 520 B.R. 861, 870 (Bankr. D.N.M. 2014)(Thuma, J.)(stating, "reliance on a debtor's representations is justifiable if no "red flags" alert the creditor that further investigation is necessary."). In determining justifiable reliance the Court uses a subjective inquiry to "examine the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case." *In re Riebesell*, 586 F.3d at 792.

In this case, Boyer justifiably relied on Mr. Smith's implied representation that he would sign and return the new Allstate Agreements to Allstate. Allstate had approved Mr. Smith's purchase of the book of business in connection with his service as an independent Allstate insurance agent. Mr. Smith agreed in conversations and in writing to execute and return the new Allstate Agreements to Allstate. Joel and Christina Boyer, acting as the owners and members of Boyer did not think it was necessary to investigate anything in this regard, and there was nothing to put them on notice that they were being deceived. Although familiar with the insurance business, they were not lawyers nor were they represented by counsel in this transaction. They

took Mr. Smith at his word. Considering the circumstances of this transaction, the Court has determined that Boyer's reliance was justifiable.

*The debtor's false pretenses caused the creditor to sustain a loss.*

The final element is whether the debtor's false pretenses caused the creditor to sustain a loss. Excepting a debt from discharge requires the plaintiff prove proximate cause, which has "two elements, causation in fact and legal causation." *Hernandez v. Musgrave (In re Musgrave)*, 2011 WL 312883, *9 (10th Cir. BAP Feb. 2, 2011) (unpublished) (quoting the Restatement of the Law of Torts (Second), internal quotations and citations removed). The first element, "causation in fact requires that a debtor's misrepresentations be a substantial factor in determining the course of conduct that results in [the] loss." *Musgrave,* 2011 WL 312883 at *9. The second element, "[l]egal causation requires that a creditor's loss reasonably be expected to result from the reliance." *Id.* In New Mexico proximate cause "is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred." *Cano v. Lovato*, 1986-NMCA-043, ¶ 53, 105 N.M. 522, 535, 734 P.2d 762, 775. The Court concludes that Mr. Smith's false pretenses proximately caused Boyer's loss under the Promissory Note.

Mr. Smith's false pretenses were a cause in fact of Boyer's loss because the false pretenses were "a substantial factor in determining the course of conduct that result[ed] in the loss." *In re Musgrave*, 2011 WL 312883, at *10 (citing *In re Brown*, 217 B.R. 857, 862 (Bankr. C.D. Cal. 1998) and *Restatement (Second) of Torts*, § 546, 548A. (1976). The false pretense that led Boyer to believe that Mr. Smith would execute and promptly return the new Allstate Agreements to Allstate was a substantial factor in Boyer's decision to lend Mr. Smith $128,170.82. The failure to obtain a lien and note payments from Allstate in the form of automatic commission deductions contributed to Boyer's loss. The Court concludes that the false

-12-

pretense was a cause in fact of Boyer's loss.

Mr. Smith's false pretenses are the legal cause of Boyer's loss. Legal causation requires the Court to determine whether the Plaintiff's loss was a foreseeable risk of harm of the Debtor's false pretense regarding the Allstate Agreements. The crux of legal causation is foreseeability.

> In general, the misrepresentation is a legal cause only of those pecuniary losses that are within the foreseeable risk of harm that it creates . . . the matter misrepresented must be considered in the light of its tendency to cause those losses and the likelihood that they will follow.

*In re Baillio*, 2010 WL 3782065, at *18 (Bankr. D.N.M. Sept. 21, 2010); *see also In re O'Brien*, 555 B.R. 771, 782–83 (Bankr. D. Kan. 2016)(stating, "proximate cause—or legal causation—is largely a question of foreseeability. In other words, a fraudulent misrepresentation is the proximate cause of a loss if, but only if, the loss might reasonably be expected to result from the reliance.") (internal quotation marks and citations omitted).

The Court has found the loss Boyer has suffered was reasonably foreseeable as a result of Boyer's reliance on the false pretense. It was reasonably foreseeable that without a security interest in Mr. Smith's interest in the book of business and without in automatic note payments from the Allstate commission checks there was a greater risk of nonpayment under the Promissory Note and that Boyer would suffer a loss on default under the Promissory Note. Had Mr. Smith executed and delivered the new Allstate Agreements the Boyers would not have been unsecured creditors in Mr. Smith's chapter 7 bankruptcy case.

Thus, Boyer has satisfied the causation element of 11 U.S.C. 523(a)(2)(A).

## CONCLUSION

There is a pending action in state court in which Boyer seeks a judgment on the amount Mr. Smith owned under the Promissory Note. Boyer did not ask this Court to award a money judgment and the amount owing under the Promissory Note is not in evidence. Therefore, the

Court will except the debt Mr. Smith owes under the Promissory Note from his bankruptcy discharge but will not enter a money judgment in that amount. Unless impeded by the automatic stay, Boyer may return to state court to seek that judgment.

The Court will enter an order consistent with this Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Court

Date entered on docket: November 9, 2017

COPY TO:

David A. Ferrance
Counsel for the Plaintiff
317 Commercial St. NE, Suite A
Albuquerque, NM 87102

Harrison E. Smith, Jr.
11133 Newcomb Ave.
Albuquerque, NM 87111